**IN THE UNITED STATES
DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIMINAL NO.: 22-cr-282** |
| **MICHAEL BOSTOCK,** | |
| **Defendant.** | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its undersigned counsel, respectfully submits this memorandum to aid the Court in fashioning an appropriate sentence for the defendant Michael Bostock ("the defendant").

The defendant is scheduled to be sentenced on June 26, 2023, for leading a $100 million scheme to defraud the Department of Veterans Affairs ("VA") education benefits program. This is the largest known Post-9/11 GI Bill fraud case ever brought by the Department of Justice. For the reasons set forth below, the government respectfully requests that the Court sentence the defendant to a period of 60 months in prison, which is the statutory maximum sentence, followed by three years of supervised release. The government additionally requests that the Court enter a restitution order and final order of forfeiture in the amounts agreed to by the parties.

### I.   Introduction

On September 9, 2022, the defendant pleaded guilty to a criminal information charging him with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371. (Dkt. 1.) On May 22, 2023, the United States Pretrial Services and Probation Office ("Probation") issued its Draft Presentence Report ("PSR"). The United States has no legal or factual objections to the PSR.

The United States respectfully requests, consistent with Probation's recommendation, that the Court impose the following sentence: (1) 60 months of imprisonment; (2) three years of supervised release; (3) a $100 mandatory special assessment; (4) that defendant be ordered to pay restitution of $104,682,860 to the VA; (5) that defendant forfeit a sum of money consistent with the terms set forth in the Preliminary Consent Order of Forfeiture (Dkt. 13), and (6) that all fines be waived.

## II.    The Defendant's Criminal Conduct

This case involves a large-scale, long-running fraud committed on a VA educational benefit program intended to help veterans pay for school and job training programs, called the Post-9/11 GI Bill.  The defendant founded and was the CEO of a school that provided Post-9/11 GI bill benefits to veterans, the California Technical Academy ("CTA").  PSR ¶¶ 15, 17.  In January 2012, the VA approved CTA as a provider of non-accredited courses to veterans and other persons receiving VA assistance for their education costs, including but not limited to tuition and housing.  For the next ten years, from January 2012 to June 2022, the defendant and his co-conspirators made false representations to the VA regarding veterans' enrollment in CTA's approved courses of study, class attendance, and grades.  *Id.* at  22.  They also falsely attested to CTA's compliance with the 85/15 rule, which mandated that no more than 85 percent of the enrollees in an approved program could be VA-funded.[1]  *Id.*

To conceal their scheme, the defendant and his co-conspirators falsified veterans' contact

---

[1] The 85 percent rule, or 85/15 rule, prohibits the VA from paying benefits to students enrolling in a program when more than 85 percent of the students enrolled have any portion of their tuition, fees, or other mandatory charges paid for them by the educational and training institution or by the VA under Title 38 and Title 10. Congress adopted the 85/15 rule to combat predatory school abuses after the implementation of the Servicemen's Readjustment Act of 1944.  Department of Veterans Affairs, Office of Education and Training, 85/15 Frequently Asked Questions, available at: https://benefits.va.gov/gibill/85_15_faqs.asp#review.  *See also* PSR ¶ 14.

information by substituting phone numbers that the defendant and his co-conspirators controlled to ensure that regulators could not contact the veterans. When regulators called the falsified phone numbers to obtain information about the school, the defendant and his co-conspirators would impersonate students. *Id.* The defendant and his co-conspirators also falsified course completion records to make it appear as if enrolled veterans completed their programs, when in fact they had not. *Id.*

For the ten years that the defendant used CTA to perpetuate this fraudulent scheme, CTA received more than $32 million in tuition payments for approximately 1,793 enrolled veterans. *Id.* at ¶ 29. During the same period, veterans enrolled in CTA's VA-approved courses received over $72 million in housing stipends and other education-related benefits. *Id.* In total, the defendant's scheme to defraud the VA resulted in a total loss of more than $104 million. *Id.*

## III.     The Defendant's Conduct Warrants a Guidelines Sentence of Incarceration

To determine an appropriate sentence, the Court must first accurately calculate the defendant's Sentencing Guidelines range, and then consider the various factors set forth in 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 49-50 (2007).

### A.   The Guidelines Calculation

Pursuant to the plea agreement in this matter, the parties have stipulated that the following Guidelines apply:

| | | |
|---|---|---|
| Base Offense Level | U.S.S.G. § 2B1.1(a) | 6 |
| Loss between $65-150 million | U.S.S.G. § 2B1.1(b)(1)(M) | 24 |
| Aggravating Role (Leader/Organizer) | U.S.S.G. § 3B1.1(a)(2) | 4 |
| Total Offense Level | | 34 |

*See* Plea Agreement ¶ 4.

In the plea agreement, the government agreed that the defendant should receive a two-point reduction for acceptance of responsibility. The government also believes that the defendant should

receive an additional one-point reduction under the Guidelines for providing the Court and the government with timely notice prior to indictment of his intention to enter a guilty plea. Under the Guidelines, therefore, the total offense level is 31.

The defendant has zero criminal history points. Accordingly, with an offense level of 31 and a criminal history category of I, the sentencing Guidelines range is 108 to 135 months' imprisonment. However, the statutorily authorized maximum sentence for a violation of 18 U.S.C. §371 is five years; therefore, the Guideline term of imprisonment is 60 months. The U.S. Probation Office concurs with this Guidelines calculation.[2] *See* PSR ¶ 167.

### B.  Section § 3553(a) Factors

As detailed further below, consideration of the Section 3553(a) factors for the defendant compels a finding that a sentence of 60 months is sufficient, but not greater than necessary. The defendant seeks a variance below the statutory maximum term of imprisonment because of the defendant's history and characteristics as well as the nature and circumstances of the offense (Defendant's Sentencing Memo at 4). While there is mitigation present in the defendant's history and characteristics, that mitigation has already been carefully incorporated into the United States' recommended sentence. The government's analysis of the § 3553(a) factors is intended to

---

[2] The Court is required to apply the version of the Guidelines in effect at the time of sentencing. *See* 18 U.S.C. 3553(a)(4)(A)(ii); U.S.S.G. § 1B1.11(a). Unless Congress provides otherwise, a proposed Guidelines amendment takes effect only after a prescribed period of congressional review has elapsed. *See* 28 U.S.C. 994(p); *Stinson v. United States*, 508 U.S. 36, 41 (1993) ("Amendments to the Guidelines must be submitted to Congress for a 6-month period of review, during which Congress can modify or disapprove them."). In this instance, absent Congressional action, the amendment will not take effect until November 1, 2023. If the Court is inclined to consider the 2-level reduction before it takes effect, the Court must calculate the Guidelines range under the current version of the Guidelines first. Then, the court may vary downward, in light of the proposed amendment. If the Court varies downward, the government asks that the Court clearly state that the variance is as a result of the amendment so that the defendant will not receive a further reduction if the Sentencing Commission subsequently makes the amendment retroactive.

highlight the appropriateness of the recommended 60-month sentence, along with the other components of the sentence to be imposed, and in so doing make clear that a lesser sentence would not be sufficient in this case.

### 1. The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense

The defendant admitted to leading and organizing what is currently the largest known Post-9/11 GI Bill benefits fraud scheme prosecuted by the U.S. Department of Justice.  *See* Plea Agreement; Dkt. 9 (Statement of the Offense).  The defendant's scheme cost the VA more than $100 million over the course of a decade.  The scope of the fraud is stunning, particularly when you consider that the scheme siphoned funds intended for providing legitimate education assistance to former service members.  The maximum custodial sentence is needed to reflect the seriousness of the defendant's conduct.

The defendant's company received VA funding to provide veterans with technical training designed to help them learn new skills and obtain greater employment opportunities.  The ultimate goal of the VA's education benefits program is to support veterans who have served their country, often at great personal cost, by helping them transition into or advance in the workforce.  The rules and regulations surrounding the VA's programs are designed to ensure that training providers, like CTA, provide quality services to veterans and properly account for the use of VA funds by accurately describing the programs provided and accurately reporting students' enrollment, course progress, and job placement. In lying to the VA about these matters and misusing funds intended to provide legitimate assistance to veterans, the defendant harmed not only the VA, but also its beneficiaries.

The defendant did this for his own personal gain.  While the defendant perpetrated the fraud at CTA, he grew his business, expanded CTA's operations from one campus to three, collected a

salary, and provided several family members, including his wife, stepdaughter, and brother, with gainful employment.  PSR ¶ 69.

This was not a one-off criminal episode or temporary lapse in judgment.  As the founder, CEO, School Certifying Official, and the primary point of contact for CTA in dealing with the VA and State Approving Agency (SAA) in California, the defendant personally prepared and submitted CTA's applications to receive funding under the Post-9/11 GI bill.  PSR ¶ 17.  The defendant also knowingly and intentionally supplied the VA with false and fraudulent information about CTA's programs, verbally and in writing, for nearly a decade.  PSR ¶ 22.  The defendant engaged in this fraudulent conduct to ensure that the VA would continue to provide funding to CTA.  PSR ¶ 23.  The maximum custodial sentence is needed to adequately reflect the seriousness of the defendant's conduct.

### 2.   The History and Characteristics of the Defendant

The defendant has entered a timely plea and accepted responsibility for his actions.  PSR ¶ 39.  In a written statement provided to Probation, he expressed remorse for his actions.  He stated, in part:

> "I made numerous false representations to the Department of Veterans Affairs (VA) related to our technical training programs. I am embarrassed to admit that I misled the VA about student enrollment, class attendance, grades, course completion, and compliance with the 85-15 rule. In addition, I falsified student contact information to cover up this fraudulent scheme.
>
> I accept full responsibility for my criminal acts. There is no excuse for providing false information to the VA. It is particularly offensive that I abused the GI Bill. This law is designed to serve America's military heroes. When I committed this crime, I betrayed my own values and disappointed countless people. I am very sorry I acted so recklessly.
>
> The United States provided me with many positive opportunities, so I am truly devastated that I broke the law. I am grateful for this orderly legal process to reckon with the harm I caused. Knowing that justice will be done in my case, I am focused on making amends and prepared to accept the consequences of my illegal acts." PSR ¶ 39.

The defendant's remorse is noteworthy. Nevertheless, the defendant has a history of difficulty following rules – from traffic infractions (PSR ¶¶ 52, 54, 56) to drug possession (¶ 53) to the instant offense – which further supports the government's assessment that a 60-month custodial sentence is necessary.

### 3. The Need to Promote Respect for the Law and Adequately Deter This Type of Criminal Conduct

There is a significant need for general deterrence in large-scale fraudulent schemes such as this. As articulated by Assistant Attorney General Kenneth A. Polite, Jr. of the Criminal Division following the defendant and his co-conspirators' guilty pleas, "[t]he Post-9/11 GI Bill was enacted to aid our military veterans and their families on behalf of a nation grateful for their service. These frauds drain funds from a vital veterans' program and undermine public faith in the administration of government. These cases demonstrate the Criminal Division's clear commitment to protecting the integrity of federal programs and to holding offenders who would abuse and exploit these programs accountable."[3] Similarly, in connection with the announcement of charges against the defendant and his co-conspirators, Inspector General Michael J. Missal of the VA emphasized the importance of "[s]afeguarding Post-9/11 GI Bill education benefit funds reserved for deserving veterans" and "hold[ing] accountable those who would defraud VA's benefit programs."[4]

In addition, general deterrence is a key factor in white-collar criminal cases. *See United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("[T]he Congress that adopted the § 3553 sentencing factors emphasized the critical deterrent value of imprisoning serious white collar criminals, even where those criminals might themselves be unlikely to commit another

---

[3]   https://www.justice.gov/opa/pr/justice-department-announces-enforcement-action-involving-over-100-million-losses-department.

[4] *Id.*

offense"); *see also United States v. Musgrave*, 761 F.3d 602, 609 (6th Cir. 2014) ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence" (internal quotation marks omitted)).

The maximum custodial sentence is also necessary to ensure that the defendant is sufficiently deterred from similar conduct in the future.  While the defendant has expressed remorse for his conduct, it was not a one-off offense.  Instead, the defendant repeatedly took advantage of VA programs for more than a decade, stopping only when his fraud was exposed. The severity of and breadth of the fraudulent scheme that the defendant led, as well as the defendant's prior criminal conduct, warrant giving significant weight to specific deterrence.  *See, e.g., United States v. Treadwell*, 593 F.3d 990, 1012-13 (9th Cir. 2010) (the severity and scope of defendant's financial fraud warranted giving significant consideration to specific deterrence).

### 4.  The Need to Avoid Unwarranted Sentencing Disparities

The District of Columbia Circuit has recognized that there will "inevitably … [be] sentencing disparities and inequities that can be explained by little more than the identities of the sentencing judges." *United States v. Gardellini*, 545 F.3d 1089, 1096 (D.C. Cir. 2008). The Guidelines "reduce unwarranted federal sentencing disparities," *Freeman v. United States,* 564 U.S. 522, 525 (2011), by "creat[ing] a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences." *Id.* at 533. A sentencing court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" by "correctly calculat[ing] and carefully review[ing] the Guidelines range." *Gall v. United States*, 552 U.S. 38, 54 (2007). "[I]mposing a within-guidelines sentence is the surest way to avoid unwarranted disparities." *United States v. White*, 737 F.3d 1121, 1145 (7th Cir. 2013).

Failing to impose a significant punishment for fraud offenses or allowing for a below-guidelines sentence risks eroding confidence in the overall judicial system. *See United States v. Moose*, 893 F.3d 951, 958 (7th Cir. 2018) (quoting Justice Breyer's article about his role on the United States Sentencing Commission as explaining "that 'to avoid unfair anomalies' among thousands of examined cases, the Commission 'increased certain white collar sentences when necessary to avoid disparity between white collar and blue collar crime.'"); *United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006) (stating the importance of the "deterrence of white-collar crime (of central concern to Congress) and the minimization of discrepancies between white- and blue-collar offenses."); *United States v. Saleh*, 257 F. App'x 740, 745 (5th Cir. 2007) (stating that a district court's substantial downward variance "could be seen as expressing a special, lenient sentencing regime for white collar criminals").

A Guidelines sentence of 60 months is consistent with and would avoid sentencing disparities among similarly situated defendants, including several defendants recently sentenced for fraud involving Post-9/11 GI Bill schemes, many of whom defrauded the VA out of substantially less money than the defendant (and were thus entitled to a lower adjustment for loss amount under U.S.S.G. § 2B1.1(b)(1)(M)). *See, e.g., United States v. Meers*, No. 2:22-cr-13 (S.D. Ga. Dec. 8, 2022) (defendant defrauded the VA out of more than $6 million, sentenced to 54 months in prison); *United States v. Davis,* No. 3:20-cr-00575-N (N.D. Tex. Sept. 21, 2021) (defendant defrauded the VA out of approximately $72 million, sentenced to 19 years in prison); *USA v. Grobes,* No. 2:16-cr-154 (E.D. Va. Mar. 8, 2017) (defendant defrauded the VA out of approximately $4.5 million, sentenced to 63 months in prison).  The government agrees with Probation's determination that none of the potential downward departures or variances from a Guidelines sentence are applicable in this case.  *See* PSR ¶¶ 190-91.

**IV.     Restitution and Forfeiture**

The provisions of the Mandatory Victim Restitution Act apply in this case, and the government is seeking an order of restitution pursuant to 18 U.S.C. § 3663A(c)(1).  Section 3663A(c)(1) mandates full restitution in this case because Section 371 is a Title 18 "offense against property…committed by fraud or deceit" in which "an identifiable victim or victims has suffered a physical injury or pecuniary loss."  As agreed to by the parties pursuant to Section 3663(a)(3), the government respectfully requests that the Court enter an order of restitution in the amount of $104,682,860 payable to the victim in this case, the VA.  Plea Agreement ¶ 12.

The government is also seeking an order of forfeiture.  A Preliminary Consent Order of Forfeiture was filed September 9, 2022.  (Dkt. 13).

**V.     Conclusion**

For the reasons set forth above, the government submits that a sentence of 60 months in prison, three years of supervised release, restitution, and forfeiture of the proceeds of the crime, is sufficient, but not greater than necessary, to comply with 18 U.S.C. § 3553(a).

Respectfully submitted,

GLENN S. LEON
Chief, Fraud Section
Criminal Division
United States Department of Justice

By:     */s/* Lauren Archer
Lauren Archer, M.D. Bar # 1412160028
Christina McGill, DC Bar # 888273721
Trial Attorneys, Fraud Section
Criminal Division
United States Department of Justice
1400 New York Avenue NW
Bond Building, Fourth Floor
Washington, D.C. 20530
Lauren.Archer2@usdoj.gov
Christina.McGill@usdoj.gov

**<u>CERTIFICATE OF SERVICE</u>**

On June 20, 2023, a copy of the foregoing was served on counsel of record for the

defendant via the Court's Electronic Filing System.

<u>*/s/ Lauren Archer*</u>
Lauren Archer
Trial Attorney, Fraud Section
Criminal Division
United States Department of Justice